## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ROBERT L. BINGHAM, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-10-387-SPS |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

### OPINION AND ORDER

The claimant Robert L. Bingham, Jr. requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. As discussed below, the Commissioner's decision is REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[1]  Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on January 28, 1964, and was forty-five years old at the time of the administrative hearing.  (Tr. 33).  The claimant earned his GED and attended vocational/technical school where he studied basic law enforcement and computer training.  (Tr. 33, 44).  He has past relevant work as a microcomputer support specialist, security guard, electronics installer, sales associate, delivery driver, delivery/laborer/paint tinter, and deputy sheriff.  (Tr. 23).  The claimant alleges that he has been unable to work since July 15, 2006 because of nerve damage in his back, arthritis in his neck, a bone spur in his back, depression, and post-traumatic stress disorder (PTSD).  (Tr. 149).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on November 9, 2007.  His applications were denied.  ALJ Glenn A. Neel determined the claimant was not disabled in a written opinion dated December 14, 2009.  (Tr. 14-24).  The Appeals Council denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal.  *See* 20 C.F.R. §§ 404.981; 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation.  He found that the claimant had severe impairments, *i. e.*, back and neck pain, depression, and PTSD (Tr. 16), but retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(b); 416.967(a) with the following restrictions: (i) climbing ramps/stairs/ladders/ropes/scaffolds, balancing, stooping, kneeling, crouching, and crawling only occasionally; (ii) working with a sit/stand option; (iii) understanding and remembering only simple, routine, repetitive tasks (Tr. 18).  The ALJ found that while the claimant could not perform any of his past relevant work, he was nevertheless not disabled because there was other work in the national economy he could perform, *i. e.*, assembler, bench hand, and general laborer (Tr. 23-24).

**Review**

The claimant contends that the ALJ erred by failing to properly analyze his RFC at step four.  The Court agrees, and the decision of the Commissioner must therefore be reversed.

The claimant testified that his neck problems began when he heard a pop in his neck while driving.  (Tr. 40).  He stated that his pain medications include percocet, tizanidine, celexa, and oxycontin.  (Tr. 45).  He described his pain as deep, throbbing, and sometimes sharp, and he testified that he sometimes loses feeling in his arms.  (Tr. 45). He testified that he cannot sit or stand in one spot for too long because of pain and

-4-

spasms in his back, and he can only lift five-ten pounds. (Tr. 49-50). He stated that his memory has faltered since he was injured.

The claimant began receiving treatment from Dr. Emmanuel O. Eminike, M.D. on October 16, 2006. (Tr. 218). At his initial evaluation, Dr. Eminike noted that claimant reported abdominal pain, back stiffness, nausea, numbness in his left arm and left leg, paravertebral muscle spasms, radicular pain in his right and left arm, radicular pain in his left leg, sexual dysfunction, weakness in his right and left arm, weakness in his right and left leg, and weight loss. (Tr. 218). Testing was unremarkable, but the claimant was sent to the emergency room. (Tr. 219). Dr. Eminike's impression was that claimant suffered from degenerative disc disease, lumbosacral radiculopathy, lumbar sprain, and abdominal pain. (Tr. 221).

The claimant began receiving treatment from High Desert Medical Group in May 2006. Those medical records reveal that claimant sought regular medical treatment for complaints of chronic pain in his neck and back (Tr. 223, 225, 227, 231, 233, 235, 245, 252, 258, 265), but he was released to return to work without restrictions on November 20, 2006. (Tr. 247). Because of uncontrolled pain, the claimant's dosage of oxycontin was increased on February 2, 2007, and the doctors noted that if that did not work to reduce the claimant's pain, they would switch to methadone. (Tr. 231). An MRI of the lumbar spine performed on March 5, 2007 revealed only mild L4-L5 discogenic disease without canal stenosis or neural foraminal narrowing, and results of other radiographic

studies revealed mostly normal results with respect to his right shoulder and cervical spine. (Tr. 319-321, 331, 339-341).

On February 9, 2008, the claimant was evaluated by state examining physician Dr. Johnson Gourd, M.D. The claimant's chief complaints were noted to be sciatic back pain and neck pain, and he reported that he had shoulder surgery in 1999. (Tr. 346). While the claimant had full range of motion in his upper and lower extremities, he did report experiencing pain during the testing. T9r. 347).

The claimant's mental health status was also evaluated by state examining physician Dr. Denise LaGrand, Psy. D. on February 28, 2008. Dr. LaGrand conducted a brief clinical interview, performed a mental status exam, and reviewed the claimant's medical records. (Tr. 353). The claimant "reported that memory problems and difficulty concentrating affect his ability to work because he is unable to complete tasks and remember important details related to work." (Tr. 353). Additionally, the claimant reported that his PTSD causes "anxiety and panic attacks in which he becomes very agitated and feels threatened." (Tr. 353). The claimant was taking Cymbalta for his depression. Dr. LaGrand noted that claimant's affect during the evaluation was as claimant reported, which was neutral; claimant also reported that his usual affect is sad, depressed, angry, and anxious. (Tr. 356). Dr. LaGrand's clinical impression was that claimant had major depressive disorder, moderate, PTSD, and pain disorder, and assessed his GAF score to be 55. (Tr. 358).

State reviewing physician Dr. Carolyn Goodrich, Ph.D., completed both a Psychiatric Review Technique and Mental Residual Functional Capacity Assessment. Dr. Goodrich found that claimant demonstrated symptoms consistent with affective disorders and anxiety-related disorders. (Tr. 369). Claimant's affective disorder was characterized by anhedonia or pervasive loss of interest in almost all activities, sleep disturbance, psychomotor agitation or retardation, decreased energy, difficulty concentrating or thinking, and thoughts of suicide. (Tr. 372). Further, claimant's anxiety-related disorder was characterized by recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress. (Tr. 374). Finally, Dr. Goodrich concluded that claimant was moderately limited in his activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. (Tr. 379). In the Mental RFC Assessment, Dr. Goodrich opined that claimant was moderately limited in the following areas: i) ability to understand and remember detailed instructions; ii) ability to carry out detailed instructions; and iii) ability to interact appropriately with the general public. (Tr. 365-66).

On May 23, 2008, the claimant sought treatment from Dr. Kalvin White, D.O. of Pain Management of Tulsa for neck and low back pain. (Tr. 530). The claimant reported that his pain extended from the neck into the shoulders and occasionally down either arm, and noted that the pain was "usually worse on the right than on the left." (Tr. 530). The claimant again reported numbness and tingling in his hands, and rated his pain a 7 on a 10-point scale. (Tr. 530). Upon physical examination, Dr. White noted that claimant had

"some tenderness over the facets in the L4-5 and L5-S1 region and tenderness at the insertion of the latissimus on the left as well." (Tr. 531). Dr. White also noted that claimant's deep tendon reflexes were "slightly decreased at the triceps on the left compared to the right." (Tr. 531). Dr. White's assessment was that claimant had cervical spondylosis, cervical radiculopathy, myofascial pain involving the cervical paraspinals, upper trapezius, and rhomboids, lumbar spondylosis, lumbar degenerative disc disease at L4-5, and low back pain. (Tr. 532). On April 10, 2009, Dr. White noted that claimant continued "to complain of pain in his back and neck" and noted "tightness of his cervical and lumbar paraspinals, upper trapezius, and rhomboids." (Tr. 526). Dr. White's impression at that time was cervical spondylosis, lumbar spondylosis, myofascial pain, and chronic pain syndrome with depression. (Tr. 526).

Residual functional capacity is defined by the Social Security Regulations as what a claimant is capable of doing despite his mental and physical limitations. *Davidson v. Secretary of Health & Human Services*, 912 F.2d 1246, 1253 (10th Cir. 1990). RFC categories have been established based on the physical demands of various kinds of work in the national economy. 20 C.F.R. § 404.1567. RFC is a medical assessment based primarily on medical findings such as symptoms, signs, and laboratory results. Additionally, medical and non-medical sources also must be considered in determining the RFC. 20 C.F.R. § 404.1545(a). When the ALJ is assessing the RFC, he "must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i. e.*, 8 hours a day, for 5 days a week, or an

equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7. However, when it is determined that the individual can do less than the full range of sedentary work, the RFC assessment must include "the presence and degree of any specific limitations and restrictions," in addition to "[t]he individual's maximum remaining capacities to perform sustained work on a regular and continuing basis. . . ." Soc. Sec. Rul. 96-9p, 1996 WL 374185, at *5.

In this case, the ALJ found that any work the claimant could perform given his physical limitations would require a "sit/stand option" (Tr. 24). But the failed to specify the parameters of the sit/stand option in accordance with Soc. Sec. R. 96-9p, which states the following:

> An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. **The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing.** It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work.

1996 WL 374185, *5 [emphasis added].

The ALJ's failure to specify the sit-stand option at step four might have been cured had he been more specific regarding the parameters of the required sit/stand option when posing his hypothetical questions to the vocational expert at the administrative

hearing (on whose testimony he relied at step five), but the ALJ failed to do this as well. (Tr. 62-63).  Thus, the VE's testimony regarding work the claimant could perform with his RFC cannot constitute substantial evidence to support the ALJ's findings at step five, because the hypotheticals did not "relate with precision all of claimant's impairments." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) ("'[T]estimony elicited by hypothetical questions that do not relate with precision all of claimant's impairments cannot constitute substantial evidence to support the Secretary's decision.'"), *quoting Ekeland v. Bowen*, 899 F.2d 719, 724 (8th Cir. 1990).  *See also Maynard*, 276 Fed. Appx. At 731 ("The ALJ's hypothetical does not comply with the [language in Soc. Sec. R. 96-9p] because it provided no specifics to the VE concerning the frequency of any need Mr. Maynard may have to alternate sitting and standing and the length of time needed to stand.  The RFC in the ALJ's hypothetical is therefore flawed as it pertains to a sit-stand option, and the VE's response is not a reliable basis for analyzing the erosion of the unskilled sedentary occupational base or the total number of jobs Mr. Maynard can perform[.]").

Because the ALJ failed to comply with Soc. Sec. R. 96-9p at steps four and five, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis of the "sit/stand option" required by the claimant, and of the work, if any, he can perform with such a requirement in his RFC.

**Conclusion**

The Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's' decision is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 28th day of March, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma